IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| **KOVA BRISTOL TENN 1894, LLC,** A Florida Limited Liability Company, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Docket No. 2:19-cv-00084 ) |
| **BRISTOL PRESERVATION, LLC,** A Tennessee Limited Liability Company, | ) ) ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF BRISTOL PRESERVATION, LLC'S MOTION FOR JUDGMENT FOR POSSESSION**

Defendant and Counter-Plaintiff, Bristol Preservation, LLC ("Bristol Preservation"), pursuant to Federal Rule of Civil Procedure 64 and Tennessee Code Annotated Section 29-18-101 *et seq.*, respectfully submits the following memorandum of law to aid the Court in deciding the issues presented by Bristol Preservation's Motion for Judgment for Possession. Bristol Preservation would show as follows:

**INTRODUCTION**

Bristol Preservation is the landowner of Tennessee's oldest golf country club, the Country Club of Bristol ("Country Club").[1] (Aff. Mitch Walters[2] ¶¶ 5-6). In an attempt to revitalize the Country Club, Bristol Preservation entered into a lease agreement with KOVA Bristol Tenn 1894, LLC ("KOVA") on April 10, 2018 ("Lease"), to operate the Country Club. [*See generally* Doc.

---

[1] The "Country Club" shall refer to all of the Leased Premises, as that term is defined by Lease Paragraph 1(a) and Exhibit A to the Lease.

[2] Mr. Walters's Affidavit is filed contemporaneously herewith.

1-1]. In exchange for the tenancy and possession of the Country Club, KOVA agreed to pay rent, taxes, and utilities, maintain insurance, and operate the Country Club in a professional and competent manner. [Doc. 1-1, PageID ## 17-18, 21-22, 26]. For a full year after KOVA took possession of the Country Club, it has failed to perform these obligations. [*See generally* Doc. 9]. In essence, KOVA would like to profit from Bristol Preservation's property without fulfilling its obligations under the Lease. Accordingly, Bristol Preservation asks that this Court enforce the terms of the Lease, apply Tennessee's Forcible Entry and Detainer Statutes, and issue a judgment for possession accompanied by a writ of possession.

## FACTUAL BACKGROUND

Beginning in the fall of 2017, Bristol Preservation—relying on KOVA's representations that it had an extensive history of successful golf course management—began discussions with KOVA; whereby, KOVA would operate and manage the entire Country Club. (Aff. Mitch Walters ¶¶ 7-9). As a result of these conversations, KOVA proposed initial terms for a lease agreement, in which KOVA would lease, operate, and manage the Country Club, pay taxes and rent, maintain insurance, and provide "all architectural, engineering and design plans and specifications and cost estimate" for renovations to the Country Club. (*Id.* at ¶ 10). In exchange, Bristol Preservation would lease the Country Club to KOVA and perform a scope of work that was mutually agreed upon by both parties. (*Id.* at ¶ 11).

As the relationship progressed, principals from KOVA, including Rick Rainville, Bill Delayo, Tracy Bradbury, and Jim Magnusson, performed multiple inspections of the Country Club.[3] (*Id.* at ¶ 12). Even after these inspections, KOVA continued to represent that it would be

---

[3] Anthony Emma, the CEO and managing member of KOVA Companies, only visited the Country Club once, even though he was repeatedly asked to visit the County Club to clarify and agree upon the scope of work. (*Id.*).

able to successfully manage, operate, and improve the Country Club. (*Id.* at ¶ 13). Relying on these continued representations, and prior to the execution of the Lease, Bristol Preservation began work on the Country Club in accordance with the proposed lease terms to keep the relationship moving forward. (*Id.* at ¶ 14-17). Bristol Preservation worked with Taff & Frye Co., Inc. to test the air quality of the Country Club and remediate mold- and asbestos- containing materials in the Country Club. (*Id.* at ¶ 14). Likewise, Bristol Preservation hired Jack Kite Co. to perform an HVAC assessment and repair the defects. (*Id.* at ¶ 15). Bristol Preservation also engaged Abingdon Roofing Co. to replace the roof on the clubhouse at the Country Club. (*Id.* at ¶ 16).

By April 10, 2018, when the parties executed the Lease, Bristol Preservation gave KOVA immediate possession of the Country Club with all pre-Lease obligations completed. (*Id.* at ¶ 18). In fact, Bristol Preservation gave KOVA possession of the Country Club in mid-March, prior to the execution of the Lease, to allow KOVA the opportunity to prepare for the upcoming golf season. (*Id.*). Moreover, Bristol Preservation agreed to abate rent for mid-March and April 2018 to allow KOVA to obtain additional cash flow. (*Id.* at ¶ 19). When KOVA requested that June 2018 rent abate, Bristol Preservation agreed but only on the understanding that payment of all rent and property taxes would begin in July 2018. (*Id.*).

To that end, and in exchange for these pre-Lease obligations, as well as post-Lease obligations, KOVA agreed to perform several promises. KOVA agreed to pay all taxes for the Country Club. [Doc. 1-1, PageID #22]. The 2018 property taxes for the Country Club were $13,230 (Sullivan County; due on February 28, 2019) and $11,213 (City of Bristol; due on January 7, 2019). (Aff. Mitch Walters ¶ 50). KOVA also agreed to three separate rent obligations:

- Fixed Rent - $75,000 per annum, payable in equal monthly installments of $6,250, due on or before the 15th day of each month and commencing on June 1, 2018

- Monthly Percentage Rent – Five percent of Tenant's Gross Revenue for the preceding month,[4] due on or before the 15th day of each month, and commencing on May 1, 2018

- Food and Beverage Rent – Five percent of Food and Beverage Gross Revenue for the preceding month,[5] due on or before the 15th day of each month, and commencing on April 1, 2018

[Doc. 1-1, PageID ##17-18]. These payments were due without demand to the office of Bristol Preservation. [Doc. 1-1, PageID #18]. Moreover, the Lease required KOVA to maintain (1) commercial general liability insurance for occurrences on the Country Club, (2) an "All Risk" or "Special Form" policy of insurance, and (3) worker's compensation insurance. [Doc. 1-1, PageID #26]. Finally, KOVA promised to "manage and operate the Golf Course, Clubhouse, and other facilities located at the Leased Premises on a continual basis through the term of this Lease and in a professional and competent manner, consistent with the management and operational practices at golf courses similar to Golf Course in Tennessee and surrounding areas." [Doc. 1-1, PageID #9].

Even though KOVA materially breached the Lease by failing to perform these obligations (as described more fully below), Bristol Preservation continued to perform under the Lease. (Aff. Mitch Walters ¶¶ 20-34). After KOVA took possession of the Country Club, Bristol Preservation engaged multiple contractors to perform the work required by Lease Paragraph 7. (*Id.* at ¶ 20). For example, Bristol Preservation offered KOVA two choices for general contractors— J. A. Street & Associates ("JASA") and Burwil Contractors. (*Id.* at ¶ 21). KOVA chose to use JASA for the remodeling projects, and Bristol Preservation engaged JASA to begin work on the Country Club. (*Id.*). Bristol Preservation then approved a number of work requests related to the Country Club

---

[4] Tenant's Gross Revenue is defined in Lease Paragraph 5(b). [Doc. 1-1, PageID #17].

[5] Tenant's Food and Beverage Gross Revenue is defined in Lease Paragraph 5(c). [Doc. 1-1, PageID #17].

clubhouse, kitchen, bathrooms, exterior, and roofing.  (*Id.* at ¶ 22).  In fact, Mr. Walters stressed to JASA the "sense of urgency" to complete the work "in order for KOVA to receive a certificate of occupancy" and requested that JASA maintain "communication and updates moving [forward]."  (*Id.* at ¶ 23).

While KOVA has alleged that Bristol Preservation did not perform the required work, Bristol Preservation has done everything in its power to direct, approve, and pay for the work required by the Lease.  (*Id.* at ¶ 24).  Moreover, Bristol Preservation has performed multiple renovations and repairs that were outside of its Lease obligations—e.g., removal of a wall between the bar and lobby; part of the complete demolition of an upstairs clubhouse restroom; removal of kitchen equipment; removal of a wall to the downstairs restaurant; adding ceiling tiles in the lower level of the clubhouse; and adding new toilets in the lower level.  (*Id.* at ¶ 25).  These additional renovations and repairs were directed by KOVA, and KOVA agreed to reimburse Bristol Preservation for these expenses.  (*Id.*).  To date, KOVA has not reimbursed Bristol Preservation for these expenses.  (*Id.*).

Even after KOVA began directly communicating with JASA and dictating the scope of the work, Bristol Preservation remained responsive and attempted to work with KOVA.  (*Id.* at ¶ 26). These direct communications between KOVA and JASA were to the exclusion of Bristol Preservation, and KOVA unilaterally requested that JASA complete work outside the scope of Bristol Preservation's responsibilities.  (*Id.*).  For example, KOVA asked JASA to repair clogged toilets that resulted from a golf event at the Country Club organized and operated by KOVA.  (*Id.*). At some point after KOVA excluded Bristol Preservation from its discussions with JASA, KOVA ceased communications with JASA.  (*Id.* at ¶ 27).  KOVA has never explained why it ceased communications.  (*Id.*).

To ensure that KOVA had every chance for success in remodeling the Country Club, Mr. Walters provided Rick Rainville with the names of interior designers and asked that he accompany Mr. Walters and his wife for dinner at several golf clubs and restaurants in the Banner Elk, North Carolina area (approximately an hour from Bristol, Tennessee). (*Id.* at ¶ 28). Despite multiple offers, Mr. Rainville never followed through on these opportunities. (*Id.*). Additionally, Mr. Walters took Mr. Rainville and several other KOVA representatives to the Virginian and The Olde Farm, other upscale golf clubs in the area, to give KOVA ideas of how other area venues were designed and succeeding. (*Id.* at ¶ 29). In another attempt to complete the redesign of the interior of the clubhouse, Bristol Preservation agreed to speak with a design firm from Nashville. (*Id.* at ¶ 30). Nonetheless, this firm, nor any other interior design firm, never contacted any agent of Bristol Preservation. (*Id.*).

In December 2018, after failing to meet its December rent and tax obligations, KOVA emailed Bristol Preservation a design proposal from Burwil Construction. (*Id.* at ¶ 31). Bristol Preservation agreed to proceed with these design proposals if KOVA would first meet its contractual obligations. (*Id.*). KOVA refused. (*Id.*). In January 2019, Mr. Walters met with Anthony Emma at KOVA's offices in Naples, Florida in an attempt to reach an agreement on the scope of work and the resumption of KOVA's rent payments under the Lease. (*Id.* at ¶ 32). Again, KOVA refused to perform its Lease obligations. (*Id.*). In February 2019, Mr. Walters attempted to arrange another meeting with Mr. Emma in Naples, Florida, but Mr. Emma refused to discuss. (*Id.* at ¶ 33). In fact, when KOVA represented that it would meet with Bristol Preservation at the Country Club if Bristol Preservation paid for additional kitchen equipment that Bristol Preservation was not required to pay for under the Lease and an exorbitant water remediation bill,

Bristol Preservation satisfied these requests. (*Id.*). Nonetheless, KOVA refused to meet to discuss the scope of work. (*Id.*).

To date, Bristol Preservation has spent over $200,000 in improving the Country Club. (*Id.* at ¶ 34).

## ARGUMENT

**I. KOVA has materially breached the Lease by failing to pay taxes.**

Lease Paragraph 12 obligates KOVA to pay all taxes for the Country Club. [Doc. 1-1, PageID # 22]. The 2018 property taxes for the Country Club were $13,230 (Sullivan County; due on February 28, 2019) and $11,213 (City of Bristol; due on January 7, 2019). (Aff. Mitch Walters ¶ 50). Prior to execution of the Lease, KOVA agreed "to pay a monthly reimbursement, to Bristol Preservation (Lessor), for amortized state and local real estate taxes for the leased property." (*Id.* at ¶ 51). On multiple occasions, Bristol Preservation demanded that KOVA pay its monthly reimbursement for taxes. (*Id.* at ¶ 52). After failing to pay these taxes, Mr. Walters reminded KOVA of its obligations on January 7, 2019. (*Id.* at ¶ 53). To date, KOVA has failed to pay these taxes, and Bristol Preservation has had to meet these obligations.[6] (*Id.* at ¶ 54).

KOVA's failure to pay taxes under the Lease constitutes a material breach. *Cain*, 914 S.W.2d at 454. In fact, the Tennessee Supreme Court specifically rejected the position that "the nonpayment of rent or taxes would result . . . in a suit for payment of rent, interest and costs" only, not possession. *Id.* at 456. Instead, the court held that a party could regain possession of the property for the failure to pay taxes. *Id.* at 459; *see also Boyd v. Berrier*, No. E2000-02546-COA-

---

[6] Bristol Preservation last notified KOVA of its breaches on July 2, 2019. (See July 2, 2019, Letter attached as **Exhibit A** to Bristol Preservation's Motion for Judgment for Possession). KOVA failed to cure these breaches within 30 days. [See Doc. 1-1, PageID #24 (allowing 30 days for KOVA to cure)].

R3-CV, 2001 WL 840297, at *1 (Tenn. Ct. App. July 26, 2001) (landlord was restored to possession of its property following tenant's failure to pay taxes).

KOVA's failure to pay taxes is a material breach, and Bristol Preservation is entitled to retake possession of the Country Club.

## II. KOVA has materially breached the Lease by failing to pay rent.

KOVA had three separate rent obligations:

- Fixed Rent - $75,000 per annum, payable in equal monthly installments of $6,250, due on or before the 15th day of each month and commencing on June 1, 2018

- Monthly Percentage Rent – Five percent of Tenant's Gross Revenue for the preceding month,[7] due on or before the 15th day of each month, and commencing on May 1, 2018

- Food and Beverage Rent – Five percent of Food and Beverage Gross Revenue for the preceding month,[8] due on or before the 15th day of each month, and commencing on April 1, 2018

[Doc. 1-1, PageID ##17-18]. These payments were due without demand to the office of Bristol Preservation. [Doc. 1-1, PageID #18]. KOVA has made only one on-time Fixed Rent payment and one percentage rent payment. (Aff. Mitch Walters ¶ 47). To date, KOVA is in arrears in the amount of $76,250, excluding its obligations for Monthly Percentage Rent and Food and Beverage Rent.[9] (*Id.* at ¶ 49).

After failing to make any rent payments by August 2018, Mr. Walters emailed Anthony Emma, a principal of KOVA, and requested an explanation for why rent had not been paid. (*Id.* at ¶¶ 35-36). Mr. Emma expressed concern over work not being completed in a timely manner. (*Id.* at ¶ 37). On September 4, 2018, Mr. Walters demanded an explanation for why rent (and

---

[7] Tenant's Gross Revenue is defined in Lease Paragraph 5(b). [Doc. 1-1, PageID #17].

[8] Tenant's Food and Beverage Gross Revenue is defined in Lease Paragraph 5(c). [Doc. 1-1, PageID #17].

[9] These percentage rents are not presently calculable because KOVA has never provided information regarding its Gross Revenue or Food and Beverage Gross Revenue. (Aff. Mitch Walters ¶ 48).

taxes) had not been paid through September 2018. (*Id.* at ¶ 38). Despite KOVA's stated concerns about Bristol Preservation's performance of work, Rick Rainville, a principal of KOVA, emailed Bristol Preservation and promised that it "fully anticipate[d] paying the pro-rate[d] rent for September the end of this week"—i.e., September 7, 2018. (*Id.* at Exhibit 7). Mr. Walters then followed up with KOVA via phone and Mr. Rainville stated that the "flag was in the ground" and rent payments would commence. (*Id.* at ¶¶ 38-39). This phone call was confirmed via email on September 6, 2018, in which Mr. Walters memorialized that "KOVA will start the monthly lease payment, the monthly property tax payment and the monthly sales% payment this month ( September 2018)." (*Id.* at ¶ 40). After missing its self-imposed deadline, Mr. Rainville emailed again on September 14 to introduce KOVA's Corporate Controller who would be responsible for "electronic process for future lease rent payments for The Golf Club of Bristol." (*Id.* at ¶ 41).

Though being woefully late, KOVA made its first Fixed Rent payment on October 4, 2018. (*Id.* at ¶ 42). This first payment included $5,000 for September's Fixed Rent. (*Id.*). The payment was deficient by $1,250 and late by almost three weeks. (*Id.* at ¶ 43). On October 18, 2018, three days after it was due, KOVA made its full October Fixed Rent payment. (*Id.* at ¶ 44). On November 13, 2018, KOVA made its full November Fixed Rent payment, which also included $3,750 in percentage rent. (*Id.* at ¶ 45). KOVA has made no additional rent payments. (*Id.* at ¶ 46).

Where a tenant fails to timely pay rent, the landlord is "deprived of a significant inducement to the making of the lease" and may seek a writ of possession from the Court. *White v. Jenkins*, No. E2002-00275-COA-R3-CV, 2002 WL 31106423, at *2 (Tenn. Ct. App. Sept. 23, 2002) (internal quotations omitted); *see also Lee v. Stanfield*, No. E2008-02168-COA-R3-CV, 2009 WL 4250155, at *10 (Tenn. Ct. App. Nov. 30, 2009) (failure to pay rent constituted unlawful detainer).

In the 17 months KOVA has occupied the Country Club, it has made one on-time Fixed Rent payment, one percentage rent payment, and has provided no documentation on Tenant's Gross Revenue or Food and Beverage Gross Revenue.[10] (Aff. Mitch Walters ¶ 47). KOVA's failure to pay rent constitutes a material breach, and Bristol Preservation is entitled to possession.

### III. KOVA has materially breached the Lease by failing to maintain adequate insurance.

Lease Paragraph 32 required KOVA to maintain (1) commercial general liability insurance for occurrences on the Country Club, (2) an "All Risk" or "Special Form" policy of insurance, and (3) worker's compensation insurance. [Doc. 1-1, PageID #26]. While it has maintained property loss coverage, in accordance with Lease Paragraph 32(b), KOVA has never provided Bristol Preservation proof of insurance for a commercial general liability policy or a worker's compensation policy. (Aff. Mitch Walters ¶ 55). In its Initial Disclosures, where it was required to produce documents that "support its claims or defenses," KOVA failed to provide any proof of insurance, except its property loss coverage. Fed. R. Civ. P. 26(a)(1)(A)(ii).

A tenant's failure to maintain adequate insurance coverage, as required by a lease, constitutes unlawful detainer, warranting the issuance of a writ of possession. *See Lee*, 2009 WL 4250155, at *10 ("We agree . . . that the Lessee is guilty of unlawful detainer as a matter of law notwithstanding the jury's finding to the contrary. The Lessee does not argue on appeal that he complied with the rental and insurance terms of the lease after the sale."). Here, KOVA has failed to maintain a commercial general liability policy and a workers' compensation policy, as specified in Lease Paragraph 32.[11] As such, Bristol Preservation is entitled to possession.

---

[10] This is in addition to the fact that KOVA took over three months to reimburse Bristol Preservation for utilities, which KOVA agreed to pay directly at the commencement of the Lease. (Aff. Mitch Walters ¶ 47); [Doc. 1-1, PageID #13].

[11] In its Answer, Bristol Preservation alleged that KOVA materially breached the lease by its "failure to maintain insurance pursuant to Paragraph 32[.]" [Doc. 9, PageID #78]. Likewise, in its Counterclaim Bristol Preservation alleged that KOVA failed to maintain adequate insurance, as required by the Lease. [Doc. 9, PageID ##81-82]. If

## IV. KOVA has materially breached the Lease by failing to operate the Country Club in a professional and competent manner.

From the commencement of the Lease, KOVA has failed to perform its promises that it was a professional and competent golf management company. Pursuant to Lease Paragraph 9,

> [KOVA] agrees it will manage and operate the Golf Course, Clubhouse, and other facilities located at the Leased Premises on a continual basis through the term of this Lease and in a professional and competent manner, consistent with the management and operational practices at golf courses similar to Golf Course in Tennessee and surrounding areas.

[Doc. 1-1, PageID #21]. Despite this promise, and its representation that it was an experienced golf management company, KOVA lists the County Club as the only golf course under its management. KOVA's operation of the Country Club has been everything but professional and competent. (Aff. Mitch Walters ¶ 56).

On April 25, 2018, Mr. Walters received a letter from Country Club member Charles Garnett expressing concern over KOVA's actions. (*Id.* at ¶ 57). KOVA "arbitrarily" cancelled Mr. Garnett's membership. (*Id.* at ¶ 58). Mr. Garnett was distrustful of KOVA's ability to manage the Country Club, and he was skeptical of the Bristol community's abiding good will given KOVA's actions. (*Id.* at ¶ 59).

Apparently, Mr. Garnett's experience with KOVA was ubiquitous within the community. For example, according to longtime member, Larry Talbert, KOVA employs young adults to run the entire Country Club. (Aff. Larry Talbert[12] ¶¶ 4-5). A single employee, with no golf course management experience, is tasked with opening and closing the facilities, answering all phones, and retrieving carts and golf balls, and the cart boy does not arrive until approximately 1:00 p.m.

---

it maintained appropriate insurance, KOVA would have produced documents supporting its defense against these allegations, as required by Rule 26(a)(1)(A)(ii), yet KOVA did not. In fact, KOVA produced its current property insurance policy, and it conspicuously notes that "Commercial General Liability" is "Not Covered." Presumably, KOVA does not maintain an appropriate commercial general liability policy or a workers' compensation policy.

[12] Mr. Talbert's Affidavit is filed contemporaneously herewith.

to assist in the retrieval of carts. (*Id.* at ¶ 6). Over the last year, the golf pro has left and has not been replaced, leaving the Country Club without a golf pro. (*Id.* at ¶ 9).

The golf course hours are sporadic, sometimes opening at 7:30 a.m. with tee times not until 8:00 a.m. (*Id.* at ¶ 7). This inconsistent opening time is out of line with other golf courses in the area, which open between 6:30 a.m. and 7:00 a.m. (*Id.* at ¶ 8). Moreover, the snack bar is closed on Monday and Tuesday, which cuts into the members' attempts to purchase food and beverages. (*Id.* at ¶ 10).

Given KOVA's lackluster management of the Country Club, Mr. Talbert will transition to a month-to-month membership in October 2019, and he has been informed by other members that they plan to do so as well. (*Id.* at ¶¶ 11-12). In fact, when showing the Country Club to prospective members, Mr. Talbert was embarrassed by the unkempt appearance of the facilities, as they were not properly mulched, weeded, or sowed with grass, and the building appearance. (*Id.* at ¶ 13). As a result, the prospective members did not join the country club. (*Id.* at ¶ 14). KOVA's actions have resulted in the fear that it is not fully committed to staying and operating the Country Club. (*Id.* at ¶ 15).

These are but a few of the complaints and concerns of which Bristol Preservation has been made aware. Mr. Walters has been repeatedly told that members are unhappy and that prospective members are wary to join. (Aff. Mitch Walters ¶ 60). For example, KOVA's failure to timely aerate the greens has caused concern amongst the Country Club members. (*Id.*). Furthermore, Mr. Walters has received invoices from local vendors and contractors showing that KOVA has failed to pay its bills (in addition to the monetary obligations KOVA has failed to perform under the Lease).[13] (*Id.* at ¶ 61).

---

[13] This pattern of non-payment is further demonstrated by the fact that KOVA rented a home owned by Roscoe Bowan, the other owner of Bristol Preservation, and did not pay him the reasonable rate of $600 per month. (Aff. Mitch

Since April 2018, KOVA has continually underperformed its obligations. (*Id.* at ¶ 62). KOVA has not employed skilled or knowledgeable employees to run the Country Club's pro shop and rarely requires management level employees to be present at the Country Club. (*Id.*). The Country Club is unclean, and the exterior has no landscaping and is plagued by weeds. (*Id.*). Furthermore, there is no sign indicating the restaurant is open, which negatively affects the Food and Beverage Percentage Rent Bristol Preservation should receive. (*Id.*). In response to Bristol Preservation's attempt to accommodate KOVA and introduce it to the local community so that it would succeed, KOVA has undermined the goodwill the community holds toward Bristol Preservation, its owners Mitch Walters and Roscoe Bowman, and the Country Club. (*Id.* at ¶ 63).

Bristol Preservation's entire purpose in leasing the Country Club to KOVA was to manage and operate the facilities, and KOVA's failure to operate and manage the Country Club in a competent and professional manner goes to the heart of the Lease. As such, KOVA's breach is material, and it is entitled to retake possession. *See M & M Elec. Contractor, Inc. v. Cumberland Elec. Membership Corp.*, 529 S.W.3d 413, 423 (Tenn. Ct. App. 2016) (analyzing the factors for a material breach—"the extent to which the injured party will be deprived of the benefit which he reasonably expected").

## V.  This Court may apply Tennessee's Forcible Entry and Detainer Statutes.

Rule 64 of the Federal Rules of Civil Procedure provides: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. Rule 64 "'gives federal courts jurisdiction to impose every remedy available

---

Walters ¶ 61 n.1). Mr. Bowman, as a gesture of goodwill, agreed to offer the rental to KOVA for half of its market value so KOVA's agent would have a place to stay when travelling from Florida to Bristol, Tennessee. (*Id.*).

under the laws of the state where the court is located to secure satisfaction of a potential judgment . . . ." *Eberhard v. Physicians Choice Lab. Servs., LLC*, No. 3:15-0156, 2016 WL 6432794, at *2 (M.D. Tenn. Oct. 31, 2016) (quoting *Bristol Anesthesia Servs., P.C. v. Carilion Clinic Medicare Res., LLC*, No. 2:15-cv-17, 2016 WL 885089, at *4 (E.D. Tenn. March 8, 2016)).[14] Moreover, federal courts routinely apply state law forcible entry and detainer statutes. *See, e.g., Mantey, Mon Ami, Lonz Wineries, Inc. v. Buckantz*, 902 F.2d 1569 (Table), 1990 WL 688857 (6th Cir. 1990) (applying Ohio's unlawful detainer statutes and affirming grant of summary judgment in favor of landlord); *U.S. v. Wilson*, 881 F.2d 596, 600 (9th Cir. 1989) (applying California's unlawful detainer statutes and upholding district court's grant of possession to landlord); *Murphy v. Texaco Inc.*, 567 F. Supp. 910, 912 (N.D. Ill. 1983) (applying Illinois' unlawful detainer statutes). Accordingly, this Court may apply Tennessee's Forcible Entry and Detainer Statutes that allow for the issuance of a writ of possession. Tenn. Code Ann. § 29-18-101 *et seq.*

Tennessee's unlawful detainer statute "creates a right to bring a cause of action for a writ of possession when a lessee remains on the leased property after the lease has been terminated." *Cain P'ship Ltd. v. Pioneer Inv. Serv. Co.*, 914 S.W.2d 452, 456 (Tenn. 1996) (citing Tenn. Code Ann. § 29-18-104). It has also been extended to allow for a writ of possession where the lease has not terminated but the tenant has failed to perform its promises within a reasonable period after being requested to do so. *Id.* at 459 (adopting the Restatement (Second) of Property, § 13.1). "In short, per . . . § 29-18-104 and *Cain*, a landlord may terminate a lease and take possession of the

---

[14] Tennessee Code Annotated Section 29-18-118 requires the court to hold a trial on the detainer warrant within 15 days. Applying similar statutes for return of personal property, this Court has previously held that Tennessee's speedy hearing statutes are applicable in federal court. *See Mack Fin. Corp. v. Clevinger*, 489 F. Supp. 1301, 1302 (E.D. Tenn. 1980) (citing Tennessee's replevin statutes and holding that the court was required to hold a hearing not later than 20 days after the motion for a writ of possession was filed). While Bristol Preservation does not object to this Court's normal briefing schedule, Bristol Preservation believes Section 29-18-118 serves as an additional basis for this Court to enter a judgment for possession and order a writ of possession to issue prior to the August 2020 final trial.

property if the tenant fails to abide by the lease provisions." *Richmond v. Frazier*, No. E2008-01132-COA-R3-CV, 2009 WL 2382303, at *7 (Tenn. Ct. App. Aug. 4, 2009).

The Restatement, adopted by *Cain*, allows the landlord and tenant to agree to remedies for breach of the lease that are in lieu of or in addition to those provided for by the Restatement. *Cain*, 914 S.W.2d at 459 ("Except to the extent the parties to a lease validly agree otherwise."). Here, not only does Tennessee law allow for Bristol Preservation to retake possession for KOVA's breaches, but the Lease allows Bristol Preservation to retake possession and continue to hold KOVA "liable for all sums which would have been payable under this Lease at such time as such amounts would have become due under the Lease from time to time, less the proceeds, if any, of reletting effected by [Bristol Preservation]." [Doc. 1-1, PageID #24]. In other words, following KOVA's failure to cure, Bristol Preservation obtained the right to terminate the Lease, seek legal remedies (including a writ of possession), and continue to seek from KOVA all sums payable under the Lease. [Doc. 1-1, PageID #24].

In short, this Court should apply Tennessee's unlawful detainer statute, enter a judgment for possession of the Country Club in favor of Bristol Preservation, and order that a writ of possession issue, if necessary.

## CONCLUSION

KOVA is in wrongful possession of the Country Club and has failed to perform almost all its Lease obligations for over a year. KOVA currently owes Bristol Preservation over $100,000. Short of this Court entering a judgment for possession, KOVA will continue to occupy the Country Club rent- and tax-free until a final hearing of this matter in August 2020. KOVA will be able to further undermine the goodwill Bristol Preservation has generated for the Country Club and itself.

Accordingly, Bristol Preservation requests that this Court:

1. Enter a judgment for possession of the Country Club, pursuant to Tennessee Code Annotated Section 29-18-104.

2. Order that the clerk issue a writ of possession, as allowed by Federal Rule of Civil Procedure 70, against KOVA for the Country Club, which is more particularly described as the Leased Premises in the Lease, if KOVA does not vacate the Country Club within ten days after entry of the judgment.[15]

3. Reserve all monetary damages resulting from KOVA's material breaches for the final hearing of this matter, which is currently scheduled for August 2020.

---

[15] Under Tennessee Code Annotated Section 29-18-130, a plaintiff is entitled to immediate possession via a writ of possession following an entry of judgment. Nonetheless, Bristol Preservation is amenable to giving KOVA ten days following the entry of judgment to wrap up its affairs at the Country Club and comply with its post-termination obligations, as set forth in Lease Paragraph 41(b).

Respectfully submitted this 5th day of August, 2019.

**PAINE, TARWATER, and BICKERS, LLP**

/s Dwight E. Tarwater
Dwight E. Tarwater (BPR #007244)
det@painetarwater.com
Adam R. Duggan (BPR #035121)
ard@painetarwater.com
900 South Gay Street, Suite 2200
Knoxville, Tennessee 37902
865-525-0880

**THE ISAACS LAW FIRM**

/s Gregory Isaacs
Gregory Isaacs (BPR #013282)
gpi@isaacslawfirm.com
618 South Gay Street, Suite 300
Knoxville, Tennessee 37902
865-673-4953

*Counsel for Defendant Bristol Preservation, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of August, 2019, the foregoing was served on the following via the Court's electronic filing system:

William A. Reeves
Lindsey L. Hobbs
WISE & REEVES, PLLC
Two Centre Square, Ste. 160
625 S. Gay Street
Knoxville, TN 37902

/s Dwight E. Tarwater